## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | **Chapter 15** |
| | ) | |
| **SALERNO PLASTIC FILM AND BAGS (USA) INC.** | ) | **Case No. 10-** |
| | ) | |
| **Debtor.** | ) | |
| Tax ID No. xx-xxx9372 | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CHAPTER 15 PETITION
## FOR RECOGNITION OF FOREIGN PROCEEDING AND
## <u>MOTION FOR RELATED RELIEF</u>

Peter A. Pastore
MCNAMEE, LOCHNER, TITUS & WILLIAMS
677 Broadway, P.O. Box 459
Albany, New York 12201-0459
Telephone: (518) 447-3200

-and-

Russell C. Silberglied
L. Katherine Good
Marisa A. Terranova
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19803
Telephone: (302) 651-7700

*Attorneys for PricewaterhouseCoopers Inc.,
Receiver of Salerno Plastic Film and Bags (USA)
Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ...................................................................................................................... 2

THE CANADIAN PROCEEDING IS ENTITLED TO RECOGNITION
AS A FOREIGN MAIN PROCEEDING ............................................................................ 2

    A.   The Court has Jurisdiction to Recognize the Canadian Proceeding and Grant the Relief
        Requested ................................................................................................................... 3

    B.   This Case is Properly Commenced under Chapter 15 ....................................................... 4

    C.   This Case Concerns a Foreign Proceeding ...................................................................... 4

    D.   This Case was Commenced by a Foreign Representative ................................................. 5

    E.   This Chapter 15 Case was Properly Commenced .............................................................. 6

    F.   The Canadian Proceeding Should be Recognized as a Foreign Main Proceeding or,
        Alternatively as a Foreign Non-Main Proceeding ............................................................ 6

    G.   The Receiver is Entitled to an Order Granting Recognition ............................................. 9

THE INTERIM STAY REQUESTED BY THE RECEIVER IS
WITHIN THE SCOPE OF SECTION 1519 AND APPROPRIATE
UNDER THE CIRCUMSTANCES ...................................................................................... 10

    A.   The Relief Requested is Authorized by Section 1519(a)(1) and (a)(3) ........................... 10

    B.   The Receiver Satisfies the Requirements of Section 1519(e) .......................................... 12

        (i)      Salerno US Faces Irreparable Harm ................................................................ 15

        (ii)    The Balance of the Hardships Tips Decidedly in Favor of the Receiver ............... 17

CONCLUSION .................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Abitibi-Consolidated Inc.*,
    No. 09-11348 (Bankr. D. Del. Apr. 21, 2009) (granting stay commencing on date of
    order and continuing until date of entry of recognition order) .................................................11

*Almontaser v. N.Y., City Dept. of Educ.*, 519 F.3d 505, 508
    (2d Cir. 2008) ...................................................................................................................13

*In re Artimm*,
    278 B.R. 832 (Bankr. C.D. Cal 2002) ..............................................................................11

*In re Banco Nacional de Obras v. Servicios Publico, S N C.*,
    91 B.R. 661 (Bankr. S.D.N.Y. 1988) ...............................................................................12

*In re Basis Yield Alpha Fund (Master)*,
    381 B.R 37 (Bankr. S D.N.Y. 2008)..................................................................................7

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
    238 B.R. 25 (Bankr. S.D.N.Y. 1999) ...............................................................................17

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
    374 B.R. 122 (Bankr. S.D.N.Y. 2007) ...............................................................................8

*Bennett v. Mfrs. & Traders Trust Co.*,
    No. 99-827, 2000 U.S. Dist. Lexis 15316 (N.D.N.Y. 2000) ............................................12

*In re Bird*,
    222 B.R. 229 (Bankr. S.D.N.Y. 1998) .............................................................................12

*Caddel v. Clairton Corp.*
    105 B.R. 366 (N.D. Tex. 1989)..........................................................................................5

*In re Chemokine Therapeutics Corp.*,
    No. 09-11189 (Bankr. D. Del. Apr. 28, 2009) ..............................................................4, 14

*Cornfield v. Investors Overseas Servs. Ltd.*,
    471 F. Supp. 1255 (S.D.N.Y. 1979), *aff'd*, 614 F 2d 1286 (2d Cir. 1979) ......................5, 17

*In re Culmer*,
    25 B.R. 621 (Bankr. S.D.N.Y. 1982) ...............................................................................11

*In re Davis*,
    191 B.R. 577 (Bankr. S.D.N.Y. 1996) ...............................................................................5

RLF1 3633346v. 1

*In re Destinator Technologies, Inc.*,
     No. 08-11003 (Bankr. D. Del. May 23, 2008) ........................................................................14

*Fidelity Mortgage Investors v. Camelia Builders Inc.*,
     550 F.2d 47 (2d Cir. 1976).........................................................................................................12

*In re G.T.T.-Stats International Inc.*,
     No. 07-11886 (Bankr. N.D.N.Y. Sept. 21, 2007) ...................................................4, 11, 13, 18

*In re Gercke*,
     122 B.R 621 (Bankr. D.D.C. 1991) ..........................................................................................15

*Granny Goose Foods, Inc v Brotherhood of Teamsters and Auto Truck Drivers*,
     415 U.S. 423 (1974)....................................................................................................................15

*In re Klyties' Development, Inc.*,
     No. 07-22719 (Bankr. D. Co. Feb. 8, 2008) ..............................................................................6

*In re Lines*,
     81 B.R. 267 (Bankr. S.D.N.Y. 1988)........................................................................................15

*In re Main Knitting, Inc.*,
     No. 08-11272 (Bankr. N.D.N.Y. Apr. 25, 2008) ......................................................................13

*In re Main Knitting, Inc.*,
     No. 08-11272 (Bankr. N.D.N.Y. May 5, 2008) ...................................................................11, 16

*In re Main Knitting, Inc.*,
     No. 08-11272 (Bankr. N.D.N.Y. June 18, 2008)........................................................................5

*Metropolitan Taxicab Bd. of Trade v. City of New York*,
     615 F.3d 152 (2d Cir. 2010).......................................................................................................12

*In re Muscletech Research and Dev. Inc., et al.*, Nos. 06 CIV 538 and 539
     (S.D.N.Y. Feb. 7, 2006) ......................................................................................................14, 15

*In re Muscletech Research and Dev. Inc., et al.*, Nos. 06 CIV 538 and 539
     (S.D.N.Y. Mar. 2, 2006) ............................................................................................................18

*In re Muscletech Research and Dev. Inc., et al.*, Nos. 06 CIV 538 and 539
     (S.D.N.Y. Aug. 11, 2006) ..........................................................................................................17

*In re Northshield Asset Management (Canada) Ltd.*,
     No. 06-40997 (Bankr. D. Minn. Jun. 28, 2006).........................................................................6

*In re Petition of Lloyd*,
     2005 WL 3764946 (Bankr. S.D.N.Y. 2005) .............................................................................13

RLFI 3633346v. 1

*Plaza Health Laboratories, Inc. v. Perales*,
  878 F.2d 577 (2d Cir. 1989)................................................................12

*In re Singer (United Standard Insur. Co. Ltd.)*,
  205 B.R. 355 (S.D.N.Y. 1997)............................................................11

*Smith v. Dominion Bridge Corp.*,
  No. 96-7580, 1999 WL 111465 (E.D. Pa. Mar. 2, 1999) ........................5

*Victrix S.S. Co., S.A. v. Salen Thy Cargo A.B.*,
  825 F.2d 709 (2d Cir. 1987)................................................................15

**STATUTES & RULES**

11 U.S.C. § 101...............................................................3, 4, 5, 9

11 U.S.C. §105.............................................................2, 10, 11, 12

11 U.S.C. §304................................................................5, 9, 11

11 U.S.C. §362...................................................................10, 14

11 U S C §363..................................................................1, 10, 14

11 U.S.C. §1501.............................................................3, 4, 9, 18

11 U.S.C. § 1502.............................................................3, 8, 9

11 U.S.C. § 1504................................................................3, 6

11 U.S.C. § 1506.....................................................................9

11 U.S.C. § 1508.....................................................................9

11 U.S.C. § 1515................................................................3, 6, 9

11 U.S.C. § 1516................................................................6, 7

11 U.S.C. § 1517................................................................1, 6, 9

11 U.S.C. § 1519.........................................................1, 10, 11, 12, 16

11 U.S.C. § 1520.........................................................1, 2, 10, 14

11 U.S.C. § 1521.........................................................1, 2, 10, 11, 14

11 U.S.C. § 1525....................................................................18

28 U.S.C. §157.......................................................................3

RLF1 3633346v. 1

28 U.S.C. § 1334................................................................................................................3

28 U.S.C. § 1410................................................................................................................3

Rule 7065 of the Federal Rules of Bankruptcy Procedure .......................................................2, 15

Rule 2002(q) of the Federal Rules of Bankruptcy Procedure..........................................................3

**OTHER AUTHORITIES**

H.R. Rep. 109-31(1), 109...................................................................................................9

RLF1 3633346v. 1

The Receiver has commenced this chapter 15 case ancillary to the Canadian Proceeding under the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") by filing the Verified Petition for Recognition of the Canadian Proceeding on behalf of Salerno US (the "Petition"). The ultimate point of this chapter 15 case is twofold: (i) to grant recognition to the Receivership Order entered by the Canadian Court and to the Canadian Proceeding generally as a foreign main proceeding and (ii) to grant a stay, initially on an interim basis and ultimately on a final basis, against creditor recovery efforts in the United States.

To achieve these goals, the Receiver seeks (a) recognition of the Canadian Proceeding as a "foreign main proceeding" or, alternatively, a "foreign non-main proceeding"; (b) the granting of an interim order (the "Emergency Order") which imposes a stay of all proceedings against the Receiver and Salerno US, and its business and property and grants other temporary relief; (c) after notice and a hearing, entry of an order extending the stay obtained by the Emergency Order on a permanent basis; (d) entry of an order on an immediate and provisional basis, recognizing the Receivership Order to the extent that it authorizes the appointment of the Receiver and allows it to continue a marketing and sale process, seeking a sale of substantially all of the Salerno Entities' assets free and clear of all liens, claims and encumbrances; and (e) concurrently with or after entry of a recognition order under section 1517 of the Bankruptcy Code, entry of an order recognizing the Receivership Order or any other order of the Canadian Court authorizing such a sale of the Salerno Entities' assets, to the same extent set forth in the Receivership Order or subsequent orders of the Canadian Court, pursuant to sections 1520(a)(2) or 1521(a)(7) substantially consistent with section 363 of the Bankruptcy Code.

1

The Receiver also respectfully files this Memorandum of Law pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 65 of the Federal Rules of Civil Procedure (the "Federal Rules") in support of the Petition and the Motion for Emergency and Final Relief Pursuant to 11 U.S.C. §§ 105(a), 1519, 1520, and 1521 (the "Motion") filed concurrently herewith.

## FACTUAL BACKGROUND

A full recitation of the federal background is set forth in the Motion at ¶¶ 3-24. That discussion is incorporated by reference as if fully set forth herein.

## ARGUMENT

The purpose of the Canadian Proceeding is to maximize the value to be distributed to creditors of the Salerno Entities through implementation of the sale process authorized by the Canadian Court under the supervision of the Receiver. As a proceeding under the BIA in the Canadian Court, the Canadian Proceeding is entitled to the recognition and relief provided by chapter 15 of the Bankruptcy Code. Further, the Receiver believes that granting the additional relief sought herein will best assure maximization of value through the sale process, just treatment for all holders of claims against Salerno US and its assets, protection of claim holders in the United States against prejudice, distribution of proceeds of Salerno US's assets substantially in accordance with the order prescribed by the Bankruptcy Code, and the economic and expeditious administration of Salerno US's affairs, consistent with the principles set forth in chapter 15 of the Bankruptcy Code.

## THE CANADIAN PROCEEDING IS ENTITLED
## TO RECOGNITION AS A FOREIGN MAIN PROCEEDING

The Canadian Proceeding is entitled to recognition as a foreign main proceeding under chapter 15 of the Bankruptcy Code because, among other things:

2

(A)     the Canadian Proceeding is a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code, and is a foreign main proceeding within the meaning of section 1502(4) of the Bankruptcy Code, because the Canadian Proceeding is pending in the location of Salerno US's center of main interest;

(B)     the Receiver is a foreign representative within the meaning of section 101(24);

(C)     the Petition seeking recognition under chapter 15 of the Bankruptcy Code was filed in accordance with section 1504 of the Bankruptcy Code with respect to Salerno US; and

(D)     the Petition meets the requirements of section 1515 of the Bankruptcy Code with respect to Salerno US.

A.      <u>The Court has Jurisdiction to Recognize the Canadian Proceeding and Grant the Relief Requested</u>

This Court has jurisdiction to hear and determine cases commenced under the Bankruptcy Code and all core proceedings arising thereunder pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code. A case under chapter 15 is a "case" under the Bankruptcy Code. Recognition of foreign proceedings and other matters under chapter 15 of the Bankruptcy Code have expressly been designated as core proceedings pursuant to 28 U.S.C. § 157(o)(2)(P).

In addition, venue is proper in this District pursuant to 28 U.S.C. § 1410(a)(1) and (3) because Salerno US's primary assets within the United States -- its plant -- is located in Plattsburgh, NY.

B.    This Case is Properly Commenced under Chapter 15

Chapter 15 applies where, as here, assistance is sought in the United States by a foreign representative, such as the Receiver, in connection with a foreign proceeding. 11 U.S.C. §1501(b)(1).   This chapter 15 case has been commenced for the purpose of obtaining the assistance of this Court to ensure the orderly sale process approved by the creditors in the Canadian Proceeding and the effective and economical implementation of the Canadian Proceeding.

C.    This Case Concerns a Foreign Proceeding

Bankruptcy Code section 101(23) provides in pertinent part, as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. §101(23). Unquestionably, proceedings under the BIA constitute a "collective judicial … proceeding in a foreign country" under "a law relating to insolvency and adjustment of debt" in which the assets and affairs of Salerno US are subject to control or supervision by the Canadian Court for the purpose of liquidation; it is one of the primary means of liquidation through bankruptcy under Canada law. Indeed, since the passage of chapter 15, a number of Canadian proceedings under the BIA have been recognized by courts in the United States as foreign proceedings. *See, e.g., In re G.T.T.-Stats International Inc.*, No. 07-11886 (Bankr. N.D.N.Y. Sept. 21, 2007); *In re Chemokine Therapeutics Corp.*, No. 09-11189 (Bankr. D. Del. Apr. 28, 2009).[1] Likewise, the Canadian Proceeding is entitled to recognition.

---

[1]    All unreported orders cited herein are attached to the "Compendium of unreported orders" filed contemporaneously herewith.

Accordingly, the chapter 15 case concerns a foreign proceeding within the meaning of section 101(23) of the Bankruptcy Code.[2]

D.    This Case was Commenced by a Foreign Representative

This chapter 15 case was commenced by an authorized "foreign representative" of Salerno US within the meaning of section 101(24) of the Bankruptcy Code, which defines a "foreign representative" in pertinent part as a "person or body...authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

The Receivership Order evidences that the Receiver was appointed and is duly authorized to act as the Receiver and foreign representative of Salerno US within the meaning of section 101(24). *See* Receivership Order, ¶3 (itemizing a non-exhaustive list, over two pages in length, of the Receiver's powers, including (j) initiating proceedings "with respect to the Debtors [or] the Property" and (u) to "act as a foreign representative in a petition under Chapter 15 of the United States Bankruptcy Code to recognize these proceedings"). Indeed, the Receivership Order specifically "ORDERS that the Receiver be at liberty and is hereby authorized and empowered to apply to any Court ... for the recognition of this Order ... and ... is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada." *Id.* at ¶ 26. Thus, the

---

[2] Further, this Court has granted chapter 15 recognition to orders entered under a different Canadian Insolvency law, the CCAA. *See, e.g., Main Knitting, Inc.*, No. 08-11272 (Bankr. N.D.N.Y. Jun. 18, 2008). In this case, because the insolvency proceeding is a receivership initiated by CIBC for liquidation purposes rather than reorganization, the relevant statute is the BIA rather than the CCAA, but this is a distinction without a difference for purposes of section 101(23). In addition, under former section 304 of the Bankruptcy Code, the statutory predecessor to chapter 15, Canadian proceedings, including insolvency proceedings, were regularly granted comity. *See, e.g., Smith v. Dominion Bridge Corp.*, No. 96-7580, 1999 WL 111465, at *3 (E.D. Pa. Mar. 2, 1999) ("As a sister common law jurisdiction, courts have consistently extended comity to Canadian Bankruptcy proceedings"); *In re Davis*, 191 B.R. 577, 587 (Bankr. S.D.N.Y. 1996) ("Courts in the United States uniformly grant comity to Canadian proceedings"); *Cornfield v. Investors Overseas Servs. Ltd.*, 471 F. Supp. 1255, 1260-62 (S.D.N.Y. 1979), *aff'd*, 614 F.2d 1286 (2d Cir. 1979); *Caddel v. Clairton Corp.*, 105 B.R. 366 (N.D. Tex. 1989).

5

Canadian Court contemplated that the Receiver would act as the Foreign Representative in this chapter 15 case.

Further, Receivers appointed by the Canadian Court in receivership proceedings arising under Canadian law are consistently considered "foreign representatives." *See, e.g., In re Klyties' Development, Inc.*, No. 07-22719 (Bankr. D. Co. Feb. 8, 2008) (recognizing Canadian proceeding as a "foreign proceeding" and court-appointed receiver as "foreign representative" under the Bankruptcy Code"); *In re Northshield Asset Management (Canada) Ltd.*, No. 06-40997 (Bankr. D. Minn. Jun. 28, 2006) (same).

E.    This Chapter 15 Case was Properly Commenced

This chapter 15 case was duly and properly commenced as required by section 1504 of the Bankruptcy Code by the filing of the Petition for recognition of a foreign proceeding under section 1515(a) of the Bankruptcy Code for Salerno US accompanied by all documents and information required by sections 1515(b) and (c) of the Bankruptcy Code, including: (i) a certified copy of the Receivership Order and (ii) a statement identifying all foreign proceedings with respect to Salerno US that are known to the Receiver. The Receiver is not aware of any other foreign proceedings pending with respect to Salerno US. Having filed the above-referenced documents and because the Court is entitled under section 1516(b) of the Bankruptcy Code to presume the authenticity of the Receivership Order, the requirements of section 1515 have been met.

F.    The Canadian Proceeding Should be Recognized as a Foreign Main Proceeding or, alternatively as a Foreign Non-Main Proceeding

The Bankruptcy Code provides that a foreign proceeding for which chapter 15 recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has its center of its main interests. 11 U.S.C. §1517(b)(1). While in

the absence of evidence to the contrary, the debtor's registered office is presumed to be the center of the debtor's main interests, such presumption may be rebutted by evidence to the contrary. 11 U S C §1516(c); *In re Basis Yield Alpha Fund (Master)*, 381 B.R 37, 48 (Bankr. S D.N.Y. 2008).

Salerno US's center of main interests is in Canada. While certainly the US Plant is located in Plattsburgh, that does not end the analysis. Salerno US is a wholly owned subsidiary of Salerno Parent, a Canadian Corporation doing business in Québec. Salerno US is governed by the same management team as the other Salerno Entities. Accordingly, all of Salerno US's strategic decision making and management functions occur in Châteauguay, Québec, where the management team is located. Further, Salerno US has the same board of directors as Salerno Parent, a single director who is a Canadian resident. Thus, its business decisions are made in Canada. Salerno US has no independent operating financing, but rather is dependent upon Canadian-based financing supplied to Salerno Parent, and is a guarantor under the Credit Agreement. In other words, the parent, in Canada, draws money from a Canadian bank and downstreams it to Salerno US, and in return Salerno US must guaranty its parent's debts in Canada. Salerno US operates a bank account in Canada, and all of its receivables are ultimately deposited in a single Canadian bank account shared by the Salerno Entities. Salerno US also transfers inventory, from time to time, with Salerno Parent in Canada. The accounting records of Salerno US are maintained by Salerno Parent in Châteauguay, Québec. The US Plant and the plant owned by Salerno Parent are managed and controlled jointly as if they were one, with chief operating decisions being made in Châteauguay, and the production and operating decisions at the US Plant made in coordination with Salerno Parent by senior management in Châteauguay. Both plants produce products for the same group of customers located in Canada

and the United States, and production can be, and regularly is, switched between plants with minimal interruption, consistent with the joint management of operations of both companies.

In short, Salerno US cannot be looked at on a stand alone basis because it operates as an indistinguishable part of a corporate family, and there simply is no question that the family's center of main intent is Canada. Indeed, even looking just at Salerno US, the "brain" of the corporate body is located in Canada since its managers and board are located at its Canadian head office and make decisions there.

The connections that Salerno US has with the United Sates are insufficient to support a conclusion that the Canadian Proceeding is not a foreign main proceeding. These connections are (i) that Salerno US is a Delaware corporation - it otherwise does not have any connections with the state of Delaware and (ii) it owns the US Plant. The US Plant, however, is the second plant for the Salerno Entities, all of the proceeds of which are ultimately deposited into the shared Canadian bank account of the Salerno Entities. As set forth above, the decision making authority is not in New York but in Québec, Canada. Accordingly, the Canadian Proceeding is pending in the center of Salerno US's main interests and constitutes a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code.

Alternatively, it can hardly be disputed that the Canadian Proceeding is pending where Salerno US has an "establishment" for the conduct of nontransitory economic activity. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 131 (Bankr. S.D.N.Y. 2007). Given that the board and a management are in Canada, the financing comes from Canada and the other factors set forth above, far more than "non transitory economic activity" is conducted in Canada.

G.     The Receiver is Entitled to an Order Granting Recognition

As evidenced above, the foreign proceeding for which recognition is sought is a "foreign main proceeding" within the meaning of section 1502 of the Bankruptcy Code, the Receiver applying for recognition is a "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and the Petition meets the requirements of section 1515 of the Bankruptcy Code with respect to Salerno US.  Accordingly, it is appropriate for the Court to enter an Order recognizing the Canadian Proceeding pursuant to section 1517 of the Bankruptcy Code.[3]

Moreover, recognizing the Canadian Proceeding would not be manifestly contrary to the public policy of the United States as prohibited by section 1506 of the Bankruptcy Code.[4] Indeed, granting such recognition effects the United States' public policy respecting foreign proceedings as articulated, among other ways, through the objectives set forth in sections 1501(a) and 1508 of the Bankruptcy Code.

---

[3] Section 1517. Order granting recognition

(a)     Subject to section 1506, after notice and a hearing, an order recognizing a foreign proceeding shall be entered if

(1)     such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;

(2)     the foreign representative applying for recognition is a person or body; and

(3)     the petition meets the requirements of section 1515.

11 U.S.C. § 1517 (emphasis added).

The Legislative History of this section provides that the "decision to grant recognition is not dependent upon any findings about the nature of the foreign proceedings of the sort previously mandated by section 304(c) of the Bankruptcy Code.  The requirements of this section, which incorporates the definitions in section 1502 and sections 101(23) and (24), are all that must be fulfilled to attain recognition."  H.R. Rep. 109-31(1), 109 Cong., Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 169 at 175.

[4] As the legislative history explains, "11 U.S.C. § 1506 follows of the [UNCITRAL] Model Law [on Cross-Border Insolvency (1997)] article 5 exactly, [which] is standard in UNCITRAL texts, and has been narrowly interpreted on a consistent basis in courts around the world.  The word manifestly in international usage restricts the public policy exception to the most fundamental policies of the United States."  HR Rep. 109-31(I), 109 Cong., 1st Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88,169 at 172.

RLF1 3633346v. 1

## THE INTERIM STAY REQUESTED BY THE
## RECEIVER IS WITHIN THE SCOPE OF SECTION 1519
## AND APPROPRIATE UNDER THE CIRCUMSTANCES

Upon recognition of the Canadian Proceeding as a "foreign main proceeding" the Receiver would have the benefit of the relief conferred by section 1520 of the Bankruptcy Code, including the automatic stay under section 362 and the authority to dispose of assets in the United States under section 363, each of which applies as a matter of right with respect to the Receiver and the property of Salerno US in the United States pursuant to section 1520(a)(1) and (2). In the alternative, the same relief is available upon request – and, it is respectfully submitted, would be granted under section 1521, upon recognition as a "foreign non-main proceeding."

However, the Receiver requires immediate, provisional relief in the form of an interim stay to protect against the commencement of potential actions or collection activity against the Receiver and Salerno US, and its business and property. Accordingly, the Receiver, through the Motion, also requests immediate, provisional relief from this Court granting a stay over assets located in the United States pursuant to section 1519 of the Bankruptcy Code.

A.    The Relief Requested is Authorized by Section 1519(a)(1) and (a)(3)

Sections 1519(a)(1) and (a)(3) authorize the Court to grant, on an interim basis, the forms of relief available under section 1521(a)(7) of the Bankruptcy Code. Section 1521(a)(7), in turn, provides that the Court may grant any relief available to a trustee, subject to certain exceptions not relevant here (primarily avoidance actions). Section 105(a) of the Bankruptcy Code further allows the Court to "issue any order…necessary or appropriate to carry

10

out the provisions of [title 11]."[5]  The relief sought by the Receiver is within the broad power of

this Court as clearly contemplated in sections 1519, 1521 and 105(a) of the Bankruptcy Code and

fully consistent with the relief granted in past cases in which bankruptcy courts have cooperated

with foreign proceedings under chapter 15 or former section 304, the statutory predecessor to

chapter 15.  *See, e.g., In re Main Knitting, Inc.*, No. 08-11272 (Bankr. N.D.N.Y. May 5, 2008)

(granting provisional relief including interim stay pending recognition of CCAA case as foreign

proceeding); *G.T.T.-Stats International Inc.*, No. 07-11886 (Bankr. N.D.N.Y. Sept. 21, 2007)

(granting permanent stay against the debtor or foreign representative); *see also In re Abitibi-*

*Consolidated Inc.*, No. 09-11348 (Bankr. D. Del. Apr. 21, 2009) (granting stay commencing on

date of order and continuing until date of entry of recognition order).

Moreover, the request that this Court immediately stay the commencement of

actions against the Receiver, Salerno US, its assets in the United States and its current and

former directors and officers is consistent with and indeed contemplated by the Canadian Court's

Receivership Order.  *See* Receivership Order at ¶ 25 (requesting aid and recognition of this

Court); *id.* ¶¶ 8-10 (imposing stay).  Assisting the Canadian Court is the very purpose of chapter

15.  *See In re Artimm*, 278 B.R. 832, 837 (Bankr. C.D. Cal 2002) (holding that it was appropriate

to stay litigation in the United States because "one of the principal functions of the domestic

court in an [ancillary] case is to assist in the efficient administration of the foreign proceeding by

preventing domestic creditors from pursuing or executing on assets in the United States"); *In re*

*Singer (United Standard Insur. Co. Ltd.)*, 205 B.R. 355 (S.D.N.Y. 1997).  In *In re Singer*, the

United States District Court for the Southern District of New York found that it should recognize

a stay issued in the United Kingdom (like Canada, a sister common law jurisdiction) which stay

---

[5] Section 105(a) had been cited in conjunction with former section 304 of the Bankruptcy Code to allow bankruptcy courts to mold relief in near blank check fashion.  *In re Culmer*, 25 B.R. 621, 624 (Bankr. S.D.N.Y. 1982).  The relief sought herein is far more modest.

11

became effective without notice. Accordingly, the Court can, pursuant to sections 1519 and 105(a) and principles of international comity, enjoin temporarily creditors of Salerno US from commencing such actions in the United States.

Further, the injunctive relief requested is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group." *In re Banco Nacional de Obras v. Servicios Publico, S N C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988); *see also In re Bird*, 222 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) (finding that the purpose of filing under former section 304 is to prevent local creditors from dismembering assets located in the United States). It is also necessary so that Salerno US's affairs can be centralized in a single forum in order to maximize creditors' interests. *See Fidelity Mortgage Investors v. Camelia Builders Inc.*, 550 F.2d 47, 55 (2d Cir. 1976); *Bennett v. Mfrs. & Traders Trust Co.*, No. 99-827, 2000 U.S. Dist. Lexis 15316 (N.D.N.Y. 2000).

B.    The Receiver Satisfies the Requirements of Section 1519(e)

Section 1519(e) requires a foreign representative to satisfy the general standards for injunctive relief. When considering granting injunctive relief in the Second Circuit, courts must consider whether the movant has established: "(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989); *see also Metropolitan Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) ("In order to justify a preliminary injunction, a movant must demonstrate 1) irreparable harm absent injunctive relief; 2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor,' and 3) that the public's interest weighs in favor

12

of granting an injunction") (quoting *Almontaser v. N.Y. City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008)).

Because this test more precisely applies to standard, two party litigation in which one party could be preliminary thought to be more likely successful on the merits over the contentions of another party, and in contrast in a chapter 15 case there is no anticipated trial relating to any facts in the case, the test above provides guidance on the issue of whether this Court should determine relief pursuant to section 1509(e); but courts determining this issue in the chapter 15 context have held that a showing of irreparable harm and/or a balance of hardships favoring injunctive relief is sufficient to support the imposition of a stay of proceedings against a chapter 15 debtor and its foreign representative. *See In re Petition of Lloyd*, 2005 WL 3764946, *2 (Bankr. S.D.N.Y. 2005) (holding that unless injunction imposed, immediate and irreparable harm could occur); *In re Main Knitting, Inc.*, No. 08-11272 (Bankr. N.D.N.Y. Apr. 25, 2008) (finding that balance of hardships favored debtors and irreparable harm would result if injunction not granted); *In re G.T.T.- Stats International, Inc.*, No. 07-11886 (Bankr. N.D.N.Y. Sept. 21, 2007) (finding that balance of hardships favored debtors in determining whether injunctive relief appropriate). As set out below, the Receiver can demonstrate that irreparable harm would result from failure to impose injunctive relief and that the balance of hardships tips in favor of granting the injunction.

First, based on the facts set forth above, the Canadian Proceeding is a "foreign proceeding" with respect to which the Receiver is the "foreign representative." As all proper supporting documentation was filed contemporaneously with the Petition, there is an extremely high likelihood of success in that recognition of the Petition will be granted.

Further, upon recognition as a foreign main proceeding, the interim injunctive relief requested herein will automatically apply to Salerno US under section 362 of the Bankruptcy Code, as would the authority to dispose of assets under section 363, as made applicable by operation of sections 1520(a)(1) and (2) and 1521(7) of the Bankruptcy Code.[6]

Finally, the stay of actions against Salerno US's current and former directors and officers where such actions give rise to potential indemnity claims against Salerno US is routinely granted in chapter 15 cases where the Foreign Main Proceeding is located in Canada. See, e.g., *In re Muscletech Research and Development Inc. et al.*, (Nos. 06 CIV 538 and 539) (S.D.N.Y. February 7, 2006) (enjoining temporarily the commencement or continuation of actions against non-debtor third parties who held indemnity and other claims against the foreign debtors such that actions against such third parties in effect would be claims against the debtors); *In re Destinator Technologies, Inc.*, No. 08-11003 (Bankr. D. Del. May 23, 2008) (imposing stay of all proceedings against Monitor, debtors, their businesses and property, and their former, current and future directors and officers to extent provided in order of Canadian Court); *In re Chemokine*, No. 09-11189 (Bankr. D. Del. Apr. 28, 2009) (same).

---

[6] Even if this Court recognized the Canadian proceedings only as a foreign non-main proceeding, the same relief would be available under section 1521(7); it simply would not be automatic since section 1520 would not apply.

RLF1 3633346v. 1

(i) <u>Salerno US Faces Irreparable Harm</u>

It has been consistently held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury." *In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988). Moreover, harm to an estate exists where the orderly determination of claims and the fair distribution of assets are disrupted. *See Victrix S.S. Co., S.A. v. Salen Thy Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987). Finally, irreparable harm has been found where allowing litigation to go forward with collection activities would (i) threaten the assets of a foreign estate, (ii) subject a foreign representative to a default judgment, and (iii) divert funds needed for the purpose of maximizing value for the estate's creditors. *In re Gercke*, 122 B.R 621, 626 (Bankr. D.D.C. 1991); *see also In re Muscletech Research and Development Inc. et al.*, Nos. 06 CIV 538 and 539 (S.D.N.Y February 7, 2006) (continuing stay issued by Bankruptcy Court so long as parties demonstrated progress towards the formulation of a global settlement and plan under the CCAA). The Receiver satisfies each of these criteria. If all creditors are not enjoined, the assets of Salerno US in the United States may be prematurely "pieced out" and "the orderly determination of claims and the fair distribution of assets" -- as well as to maximize value in a going concern sale -- in the foreign proceeding will be severely disrupted.

Even the issuance of an *ex parte* temporary restraining order is appropriate when, as here, the applicant is in need of immediate relief. The United States Supreme Court has held that *ex parte* temporary restraining orders "should be limited to preserving the *status quo* only for so long as is necessary to hold a hearing." *Granny Goose Foods, Inc v Brotherhood of Teamsters and Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Rule 65(b) of the Federal Rules, made applicable in these cases by Bankruptcy Rule 7065, requires that to obtain an *ex parte* temporary restraining order, the applicant must show that "immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can

15

be heard in opposition." *See, e.g, In re Main Knitting, Inc.*, No. 08-11272 (Bankr. N.D.N.Y. May 5, 2008) (issuing *ex parte* temporary restraining order pending the hearing for recognition of the Canadian proceedings).

Unless a restraining order is issued in this case, there is a material risk that certain parties in interest will commence actions against the Receiver, Salerno US, its business or property, or its former officers and directors, thereby potentially interfering with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, and interfering with and causing harm to, the Receiver's efforts to sell the assets of Salerno US pursuant to the sale process in the Canadian Proceedings. Such actions would also increase the claims against Salerno US's estate as the estate incurs defense costs and expenses which are not provided for in what admittedly is a lean budget meant only to provide the minimum cash necessary to have the company survive through a sales process. Thus, it would further undermine Salerno US's efforts to maximize value for the benefit of its creditors by endangering the sale process. Therefore, it is necessary that this Court grant the emergency relief requested herein.

Moreover, notwithstanding that the injunction standard applies, it is noteworthy that the request for relief is expressly contemplated by the statute. *See* 11 U.S.C. § 1519(a). Accordingly, the request to obtain the stay is hardly novel and the burden should not be high.

Notwithstanding the ability to grant *ex parte* relief, the Receiver has served the Petition and moving papers on the Salerno Entities, taxing authorities located in Delaware and New York, CIBC, BDC, IQ, and the Office of the United States Trustee for the Northern District of New York.

(ii)    The Balance of the Hardships Tips Decidedly in Favor of the Receiver

In contrast to the hardships described above, preservation of the *status quo* while the Receiver seeks to implement an orderly sale process and determine the course of the foreign proceeding will not significantly prejudice creditors. Indeed, Salerno US's creditors will benefit from the Receiver's efforts to preserve and maximize the value of Salerno US's estate and achieve a global, equitable resolution of claims against it. Without injunctive relief, there would be no equitable or orderly distribution of the assets pursuant to the receivership provisions of the BIA. Thus, the balance of the hardships tips decidedly in favor of Salerno US.

In addition, as described above (see Point I), the Receiver has clearly shown that Salerno US is the subject of foreign proceeding, that the Receiver is the foreign representative of Salerno US, and that the relief requested herein pursuant to chapter 15 of the Bankruptcy Code will permit Salerno US to effect the sale process contemplated in the Canadian Proceeding. Accordingly, it is highly likely that an interim stay will only be in place for approximately three weeks before a permanent stay will replace it.[7]

Third, recognizing the Canadian Proceeding and granting the relief requested herein will not be manifestly contrary to the public policy of the United States. *See, e.g., In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 66 (Bankr. S.D.N.Y. 1999) ("And, when the foreign proceeding is in a 'sister common law jurisdiction with procedures akin to our own', comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings."). On the contrary, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." *Cornfield v. Investors Overseas Servs. Ltd.*, 471

---

[7] Rule 2002(q) requires 21 days notice of a petition prior to entry of a recognition order.

F. Supp. 1255, 1259 (S.D.N.Y. 1979), *aff'd*, 614 F 2d 1286 (2d Cir. 1979).   Such policy,

embodied in repealed section 304, continues in chapter 15 of the Bankruptcy Code.   *See e.g. In*

*re Muscletech Research and Development Inc. et al.*, Nos. 06 CIV 538 and 539 (S.D.N.Y., Aug.

11, 2006) (order recognizing claims resolution procedures order of the Ontario Court that denied

personal injury and wrongful death claimants a right to a jury trial as not being manifestly

contrary to the public policy of the United States); *In re Muscletech Research and Development*

*Inc. et al.*, Nos. 06 CIV 538 and 539 (S.D.N.Y. Mar. 2, 2006) (order recognizing CCAA

proceedings and granting similar provisional relief requested by Ontario Court); *G.T.T.-Stats*

*International Inc.*, No. 07-11886 (Bankr. N.D.N.Y. Sept. 21, 2007).

Finally, in order to effectuate a sale pursuant to the ongoing marketing and sale

process, the Receivership Order expressly contemplates that the Receiver will seek such relief

from this Court to give effect to the Receivership Order in the United States.   Under section

1525(a), "consistent with section 1501, this court shall cooperate to the maximum extent possible

with a foreign court or a foreign representative."   11 U.S.C. §§1501 and 1525.   The Receiver

believes that entry of a stay is necessary to give effect to the Receivership Order.   Thus, in

addition to the reasons set forth above, this Court should enter these orders pursuant to sections

1501 and 1525, and under well-established principles of international comity.

RLF1 3633346v. 1

## CONCLUSION

The Canadian Proceeding qualifies for recognition as a foreign main proceeding and the enjoyment of the accompanying statutorily provided relief. Further, the Receiver has satisfied the requirements for the additional interim injunctive relief requested. Without recognition and the requested interim relief, Salerno US's orderly BIA process will be at risk which would substantially impair its ability to maximize recoveries for its creditors. For the foregoing reasons, the Receiver respectfully requests that this Court grant the relief requested.

Dated: December 6, 2010
      Albany, New York

                                        Peter A. Pastore
                                        MCNAMEE, LOCHNER, TITUS & WILLIAMS
                                        677 Broadway, P.O. Box 459
                                        Albany, New York 12201-0459
                                        Telephone: (518) 447-3200

                                        -and-

                                        Russell C. Silberglied
                                        L. Katherine Good
                                        Marisa A. Terranova
                                        RICHARDS, LAYTON & FINGER, P.A.
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, DE 19801
                                        Telephone: (302) 651-7700

                                        *Counsel to PricewaterhouseCoopers Inc.,*
                                        *Receiver for Salerno Plastic Film and Bags*
                                        *(USA) Inc.*